**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **Ana Karina Farms LLC, et al.** | ) | **CASE NO. 1:09 CV 1010** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Anne Fletcher, et al.** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |


## INTRODUCTION

This matter is before the Court upon the following motions:  Federal Defendants' Motion to Dismiss Amended Complaint, filed by United States Immigration and Customs Enforcement, the Federal Bureau of Investigation, the Central Intelligence Agency, and the Broadcasting Board of Governors (Doc. 19); Defendant Anne M. Fletcher dba Woods Edge Stables' Motion to Dismiss First Amended Complaint Under Rule 12(b)(6) (Doc. 23); Defendants Huntington Stables', Larry Donovan's and Holly Donovan's Motion to Dismiss First Amended Complaint Under Rule 12(b)(6) (Doc. 20); Defendants Red Hawk Stables & Waldbaums' Motion to Dismiss (Doc. 22); Defendant Robert Brown LLC's Motion to Dismiss First Amended

1

Complaint Pursuant to Rule 12(b)(6) (Doc. 24); Defendant State of Ohio's Motion to Dismiss (Doc. 39); Plaintiffs' Motion for Judgment on Pleadings (Doc. 29); and Plaintiffs' Motion for Transfer and Consolidation (Doc. 21).

For the reasons that follow, defendants' Motions to Dismiss are GRANTED, plaintiffs' Motion for Transfer and Consolidation is DENIED, and plaintiffs' Motion for Judgment on Pleadings is DENIED.

**FACTS**

Plaintiffs, Ana Karina Farms LLC, Karen K. Meade, and Karen K. Meade & Associates Co., L.P.A., bring this action against defendants, the United States of America, U.S. Immigrations and Customs Enforcement (hereinafter "ICE"), the State of Ohio (hereinafter "Ohio"), Robert Brown LLC, the Federal Bureau of Investigation (hereinafter "FBI"), the Central Intelligence Agency (hereinafter "CIA"), Radio Martinique, the Broadcasting Board of Governors (hereinafter "BBG"), Anne M. Fletcher dba Woods Edge Stables, Huntington Stables and Larry and Holly Donovan, and Red Hawk Stables and Adam and Lisa Waldbaum Trustees.

The facts in this case are somewhat confusing and are presented in the amended complaint in a disjointed manner. The Court has attempted to present them in chronological order here. Plaintiffs allege that from April 2005 to September 2007, plaintiff Ana Karina Farms LLC (hereinafter "Ana Karina") boarded its horses at defendant Woods Edge Stables. In 2006, plaintiff Karen K. Meade (hereinafter "Meade"), an attorney representing all plaintiffs in this case, reported suspicious drug-related activities of certain Geauga County, Ohio residents to one of her clients, an FBI informant. In June 2006, Meade relocated to Geauga County. In July 2007, plaintiffs allege that an associate attorney of defendant Robert Brown LLC informed

2

Meade that the drug investigation was related to pothouse investigations in which attorney Robert Brown represented several Vietnamese clients.  Plaintiffs further allege that Brown "confiscated Ms. Meade's horse clients" from her practice.  In September 2007, defendant Anne Fletcher, the owner of Woods Edge Stables, allowed several new borders at Woods Edge.

As a consequence, plaintiffs Meade and Ana Karina moved the horses to defendant Huntington Stables, owned by defendants Larry and Holly Donovan.  Meade also rented an apartment on the premises.  Larry Donovan questioned Meade about the drug investigation while she resided there.  Plaintiffs allege that Meade's apartment was "shown by [Meade's] landlady illegally" in May 2008.  Plaintiffs Meade and Ana Karina then moved from Huntington Stables. Plaintiffs allege that Meade is missing personal items due to the move, and that the Donovans were obligated to pay for medical treatment for a back injury that she received but have not done so.

From June 2008 through July 2008, plaintiffs relocated the horses to defendant Red Hawk Stables, owned by defendants Adam and Lisa Waldbaum.  Plaintiffs allege that upon their arrival comments were made to Meade about her horses and who she knew in the horse world, and that she was subjected to suspicious activities by the owners and the stable employees. Plaintiffs further allege that some employees informed her that they were employed illegally. Plaintiffs removed the horses from Red Hawk at the end of July and transferred them in August to Cornerstone Farms, where both horses were diagnosed with a disease.

Plaintiffs allege that Meade has filed numerous police reports regarding incidents at Meade's residence and at the location of plaintiff Karen K. Meade Associates & Co., L.P.A (hereinafter "Karen K. Meade & Associates"), and that federal law enforcement has been

apprised of the "interference with [Meade's] immigration based legal practice and her horse investments."  Plaintiffs also allege that local and federal agencies failed to protect her and that state and federal agencies failed to prosecute the criminals involved in these matters.

Plaintiffs originally sued some of the defendants in the Geauga County Court of Common Pleas.  The complaint was removed to this Court and subsequently amended to add additional defendants.  The complaint contains two claims for relief:  Count One is a state law claim for tortious interference with contract, which also mentions tortious interference with business relationships, and Count Two alleges a violation of the Privacy Act of 1974.

Defendants, the United States of America, ICE, the FBI, the CIA, the BBG, Anne M. Fletcher doing business as Woods Edge Stables, Huntington Stables and Larry and Holly Donovan, Adam and Lisa Waldbaum Trustees and Red Hawk Stables, Robert Brown LLC, and Ohio, move to dismiss the complaint for failure to state a claim.  Plaintiffs oppose dismissal, except as to Ohio.

Plaintiffs also move to transfer and consolidate with this case the case of *Baptie v. Meade,* Geauga County Court of Common Pleas Case No. 2009 M 000433.  Defendants, the United States of America, ICE, the FBI, the CIA, and the BBG, oppose this motion on the grounds that *Baptie v. Meade* has been settled and final judgment has been entered.

Plaintiffs further move for judgment on the pleadings against defendant Ohio for failing to answer or otherwise respond to the amended complaint.  Defendant did not respond to the motion.  Defendant Ohio moved to dismiss the amended complaint after plaintiff moved for judgment on the pleadings and plaintiff has not opposed the motion to dismiss.

4

## I.      DEFENDANTS' MOTIONS TO DISMISS

### A.      STANDARD OF REVIEW

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445, at *1 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).  In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256, at *3 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc*., 123 F.3d 394, 400 (6th Cir. 1997)).  "To survive a Rule 12(b)(6) motion, the nonmoving party must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .  Factual allegations must be enough to raise a right to relief above the speculative level." *ABS Industries, Inc. ex rel. ABS Litigation Trust v. Fifth Third Bank,* 2009 WL 1811915, at *3 (6th Cir. June 25, 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

### B.      ANALYSIS

The Court notes that plaintiffs filed a brief in opposition to all defendants' motions to dismiss, with the exception of Ohio's motion to which plaintiffs have not responded, stating only that the motions should be denied because defendant Ohio had not responded to the amended complaint.  Defendants' arguments were not addressed.  Subsequent to the case management

5

conference, plaintiffs filed a supplemental brief in opposition to all defendants' motions to dismiss, restating that the motions should be denied because Ohio had not yet responded, and additionally attaching as Exhibit C what plaintiffs purport to be "additional evidence."  Exhibit C appears to be a printout of various statements that plaintiff Meade posted to the Facebook social networking site.  These statements appear to be completely irrelevant to the case, and as such, the Court will exclude Exhibit C from consideration.

### 1.    The Federal Defendants

The federal defendants argue that the Court has no subject matter jurisdiction over plaintiffs' tortious interference claim because plaintiffs have failed to exhaust their administrative remedies under the Federal Tort Claims Act (hereinafter "FTCA"), and plaintiffs' claim is barred by sovereign immunity.  Defendants also argue that plaintiffs' claim under the Privacy Act of 1974, 5 U.S.C. § 552a, must be dismissed because any disclosures came from records maintained by plaintiffs, not by federal agencies as required by the Act.  Plaintiffs do not respond to defendants' arguments in their opposition brief.

Upon review, the Court finds that it does not have subject matter jurisdiction over plaintiffs' tortious interference claims against the federal defendants.  It is well-settled that the federal government is immune from suit except as it consents to be sued.  *Hall v. United States,* 704 F.2d 246, 251 (6th Cir. 1983) (citing *United States v. Mitchell,* 445 U.S. 535, 538 (1980)).  Any waiver of sovereign immunity must be unequivocally expressed.  *Id.*  The Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, is an express, but limited, waiver of sovereign immunity.  Tortious interference with contract claims are expressly *excluded* from the sovereign immunity waiver set forth in the FTCA.  28 U.S.C. § 2680(h).  Thus, the federal defendants are immune

6

from suit as to plaintiffs' tortious interference claim.  Accordingly, defendants' motion to dismiss as to Count One is granted.

The Privacy Act establishes the obligation of federal agencies to prevent the disclosure of agency-maintained records that contain certain types of information on individuals.  5 U.S.C. § 552a(a)(4) and (b).  If a federal agency makes a disclosure that violates the Act, an individual may sue the agency pursuant to the provisions of 5 U.S.C. § 552a(g).

Upon review, the Court finds that the amended complaint fails to state a claim for a violation of the Privacy Act.[1]  Plaintiff Karen K. Meade & Associates alleges that "its privacy and confidentiality of its international clients has been violated under the Privacy Act of 1974 by local and federal agencies as a direct result of these numerous criminal incidents."  The "numerous criminal incidents" appear to refer to the following allegations:  plaintiffs experienced "break-ins of her office and residences" which resulted in "numerous national security leaks from her business files"; plaintiff Karen K. Meade & Associates' computer systems "were under constant attack"; plaintiff Meade was "a victim of numerous crimes on the Eastside of Cleveland"; and plaintiff Karen K. Meade & Associates' "practice was confiscated by numerous individuals."  The alleged disclosures were thus from records maintained by plaintiffs, not by any federal agency as required for liability under the Privacy Act.  Accordingly, defendants' motion to dismiss as to Count Two is granted.

---

[1]  Plaintiffs also allege, as part of an apparent government conspiracy against them, violations of the "National Security Laws of the United States."  Plaintiffs cite no statutory or common law basis for this conclusory allegation, and thus it fails to state a claim. Plaintiffs also allege that plaintiff Karen K. Meade & Associates' "practice was confiscated by numerous unknown individuals in violation of its due process and civil liberties in violation of the U.S. Constitution."  This allegation is completely devoid of factual support and also fails to state a claim.

## 2.      The Stable Defendants

The Court addresses together the separate motions to dismiss filed by the following defendants because the issues are similar:  Anne M. Fletcher doing business as Woods Edge Stables; Huntington Stables and Larry and Holly Donovan; and Red Hawk Stables and Adam and Lisa Waldbaum (hereinafter "the stable defendants").  The Court notes that the stable defendants filed answers to the first amended complaint prior to filing their motions to dismiss. Thus these motions to dismiss are properly motions for judgment on the pleadings under Fed. R. Civ. P. 12(c).  The standard of review for a motion for judgment on the pleadings under Rule 12(c), however, is the same as for a motion to dismiss for failure to state a claim under 12(b)(6). *Tucker v. Middleburg-Legacy Place, LLC,* 539 F.3d 545, 549-50 (6th Cir. 2008).

The stable defendants argue that none of the allegations in the amended complaint set forth any duty on the part of the defendants, or any conduct that resulted in damages, or in any way amount to an actionable tort.  Plaintiffs do not address defendants' arguments in their opposition brief.

The elements of a tortious interference with contract claim under Ohio law are:  (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) the lack of justification; and (5) resulting damages.  *Kenty v. Transamerica Premium Ins. Co.,* 650 N.E.2d 863, 864 (Ohio 1995).

Upon review, the Court finds that the amended complaint fails to state a claim against the stable defendants.  The allegations involving these defendants are as follows:

> 8.      Plaintiff Ana Karina Farms boarded at Woods Edge Stables from April of 2005 until September of 2007 and paid $450.00 per month for the three horses.  In September of 2007 several new boarders entered Woods Edge Stables

8

after a sheriff deputy from the Geauga County Sheriff's office was alerted that a car was parked next to her truck on Labor Day weekend of September 2007. The owner Anne Fletcher allowed these individuals to enter upon the stable premises knowingly after having knowledge of the pending drug investigation. Attorney Meade represented FBI informants and former CIA intelligence officers in her law practice.

9.     Plaintiff Ana Karina Farms and its owner fled for their life in September of 2007 to a [sic] Defendant Huntington Stables owned by Larry and Holly Donovan. The owners of Huntington Stables were aware of Attorney Meade's situation. Karen K. Meade moved in with the Donovan's [sic] in December of 2007 and rented their stable apartment which was offset by working for them in exchange for rents due for the premises. While residing at Huntington Stables Plaintiff Ana Karina Farms paid $400.00 per month for full care of two horses, Leo and Contessa. Attorney Meade's rental premises was shown by her landlady illegally in May of 2008 and Meade moved from Huntington Stables as well as the horses.

10.    Karen Meade's apartment had many closed files in that location which were classified status of government contacts which should not have been disturbed. Meade was also questioned by Larry Donovan at that time regarding the pending drug investigation and Mr. Donovan indicated that he had a former girlfriend who worked for the U.S. Drug Enforcement Agency. Karen Meade is missing personal items including books, letters, personal papers and furniture as a result of moving from that location in May of 2008. Further, Meade received medical treatment which was to be paid by the Donovan's [sic] for a back related injury which has still yet to be paid. During this time period Meade had clients who performed work for the FBI and former CIA personnel.

11.    Plaintiff Ana Karina Farms LLC through Karen K. Meade relocated her horses in June 2008 to Red Hawk Stables owned by Defendants Adam and Lisa Waldbaum through July of 2008. Meade was referred to Red Hawk Stables by a fellow horseback rider Stacy Kurnava. This was to be a self-help arrangement for approximately $600.00 per

> month for the horses.  Upon arrival at the stables Meade
> was subjected to numerous comments regarding her horses
> and inquiries as to who she knew in the horse world along
> with suspicious activities by the owners and their stable
> help.  Attorney Meade was also informed by Defendant's
> Mexican stable help that they were illegally employed upon
> the premises.  Meade removed her mare from Red Hawk
> Stables at the end of July, 2008 to Portage County, Ohio
> through another trainer.

Following these allegations, plaintiffs allege that "[a]s a direct result of the Defendants in this

matter thorough tortuous [sic] interference with owner Karen K. Meade's business and client

matters Plaintiff Ana Karina Farms LLC has sustained monetary damages of the three animals. . .

."

These allegations are not sufficient to "raise a right to relief above the speculative level."

*ABS Industries, Inc.,* 2009 WL 1811915, at *3.  Plaintiffs allege interference with Meade's

business and client matters but never allege the existence of any contracts or business

relationships that were breached or terminated as a result of defendants' conduct.  The

allegations that a defendant took on new boarders, that Meade was questioned by a defendant

regarding a pending drug investigation, or that she was subjected to numerous comments and

inquiries regarding who she knew in the horse world, without any allegations as to how these

activities affected a contract or a business relationship, do not show any interference with

Meade's business and client matters.  Plaintiffs' allegation that Meade's landlady showed

Meade's apartment illegally is conclusory at best.  Further, although plaintiffs allege that Meade

had files in her apartment which were "classified status of government contacts" and should not

have been disturbed, plaintiffs do not specify by whom the files were disturbed, nor the

relationship of any disturbed files to any breached contracts or terminated business relationships.

It is also unclear how any alleged activities of the stable defendants resulted in the "monetary damages of the three animals."  Accordingly, the stable defendants' motion for judgment on the pleadings is granted.

### 3.      Robert Brown LLC

Defendant Robert Brown LLC also filed an answer to the first amended complaint prior to filing its motion to dismiss, thus its motion to dismiss is properly a motion for judgment on the pleadings.  Defendant argues that none of the factual allegations in plaintiffs' complaint support an actionable claim against it.  Defendant further argues that to the extent plaintiffs' allegations are directed toward Robert Brown in his former capacity as District Director of the U.S. Immigration and Naturalization Service, plaintiffs have not exhausted their administrative remedies under the Federal Tort Claims Act.  Finally, defendant argues that allegations directed toward Robert Brown as an individual do not result in the liability of Robert Brown LLC (hereinafter "RBLLC").  Plaintiffs do not respond to defendant's arguments in their opposition brief.

The elements of a tortious interference claim under Ohio law are set forth above in section I.B.2.  Upon review, the Court finds that the amended complaint fails to state a claim against defendant RBLLC.  The allegations involving RBLLC are as follows:

> 6.      Defendant Robert L. Brown LLC.  [sic] At all times herein mentioned was a legal professional service corporation incorporated under the State of Ohio representing immigration clients before the Executive Office of Immigration Review.  Defendant Robert L. Brown represented the Vietnamese clients in the pothouse cases brought in the United States Northern District Court of Cleveland, Ohio.  Defendant Attorney Robert L. Brown was the former District Director of the former U.S. Immigration and Naturalization Services ("INS") and as

11

> such he was responsible for placing Plaintiff Attorney
> Meade's clients in deportation and/or removal proceedings.
> Defendant Brown confiscated Plaintiff's horse industry
> clients during the pothouse investigations in conflict of
> interest and tortuously [sic] interfered with Plaintiff's
> contract obligations to her clients and former business
> associations including Richard H. Brown, Esq. of Chagrin
> Falls, Ohio.
>
> 16.    At all times herein mentioned Defendant Robert L. Brown
>        knew Ms. Meade throughout her twenty-five year law
>        practice in immigration matters during his tenure as the
>        District Director of the INS and afterwards in his private
>        practice.  Mr. Brown had an associate attorney Philip
>        Eichorn who informed Attorney Meade in July of 2007 that
>        the pothouse cases and the other people she had turned in
>        in Geauga County, Ohio were related cases.  Attorney
>        Brown continued to represent the Vietnamese involved in
>        the pothouse cases and confiscated Ms. Meade's horse
>        clients afterwards from her practice.

The Court agrees with defendant that any alleged conduct by Robert Brown acting in his

capacity as District Director of the INS fails to state a claim.  Even if Robert Brown, who is not

named as a defendant in this lawsuit, was sued in his official capacity of District Director of the

INS, the federal government has not waived its sovereign immunity with respect to tortious

interference claims.[2]

The remaining allegations also fail to state a claim for tortious interference against

Robert Brown LLC.  Plaintiffs allege that defendant "tortuously [sic] interfered with Plaintiff's

contract obligations to her clients and former business associations" by confiscating her horse

clients from her practice.  Plaintiffs provide no factual support or explanation for this statement

and it is at most a bare assertion of a legal conclusion that the Court need not accept.  *Gritton,*

---

[2]    The federal government's sovereign immunity as to tortious interference
claims is discussed in Section I.B.1 of this opinion.

12

2009 WL 1505256, at *3.  Plaintiffs do not allege the existence of a contract, defendant's knowledge of it, or that the contract was breached or some business relationship terminated as the result of defendant's conduct.  Finally, Robert Brown's representation of clients in the Vietnamese pothouse cases, without more, is not an actionable claim.  Accordingly, defendant's motion for judgment on the pleadings is granted.

### 4.    The State of Ohio

Defendant Ohio argues that the complaint fails to state a claim against it because plaintiffs' claim for tortious interference is barred by Eleventh Amendment immunity.  Defendant also argues that the Privacy Act does not apply against states, and that defendant has no affirmative duty to guarantee the safety of its citizens.  Defendant's motion is unopposed.

Upon review, the Court finds the amended complaint fails to state a claim against defendant.  The Eleventh Amendment to the United States Constitution bars suits against states in federal court, absent express waiver, for the payment of money damages.  *Gean v. Hattaway,* 330 F.3d 758, 777 (6th Cir. 2003) ("[S]uits against the state fisc seeking restitution for past damages are barred by the Eleventh Amendment."(citing *Edelman v. Jordan,* 415 U.S. 651, 663 (1974))).  Plaintiffs' tortious interference claim is thus barred.  Defendant's motion to dismiss is granted as to Count One.

Plaintiffs' claim against defendant for a Privacy Act violation is without merit as the Privacy Act only applies to federal agencies.  *Schmitt v. City of Detroit,* 395 F.3d 327, 329-31 (6th Cir. 2005).  Additionally, plaintiffs' claim that defendant failed to protect its residents or to investigate crimes, is specious.  A state has no affirmative duty to protect its citizens or to investigate wrongdoing.  *King v. City of Eastpointe,* 86 Fed. Appx. 790, 811 (6th Cir. 2003)

13

(citing *Deshaney v. Winnebago County Dept. of Social Svcs.,* 489 U.S. 189, 195 (2003)).

Accordingly, defendant's motion to dismiss is granted as to Count Two.

## II.    PLAINTIFFS' MOTION FOR TRANSFER AND CONSOLIDATION

Plaintiffs seek an order of removal for *Baptie v. Meade*, Geauga County Court of Common Pleas Case No. 2009 M 000433.  Plaintiffs argue that *Baptie* should be consolidated with the instant case as it involves issues of both state and federal law.  Federal defendants oppose the motion and attach to their opposition a consent decree signed by plaintiff Karen Meade, Berniece Baptie who is the plaintiff in *Baptie*, and Geauga County Court of Common Pleas Judge Forrest Burt.  Defendants also request that plaintiffs' motion be stricken from the record because the exhibits contain scurrilous unfounded allegations against non-party attorneys and government officials.

Upon review, the Court finds that plaintiffs' motion for transfer and consolidation must be denied.  Only pending cases may be removed to this Court.  28 U.S.C. § 1446(a).  The Geauga County Court of Common Pleas entered a final judgment in *Baptie* in which the court granted judgment against plaintiffs and plaintiffs' counterclaim was dismissed.  (Defendants' Exhibit A.)  *Baptie* is no longer pending and thus cannot be removed.  Accordingly, plaintiffs' motion for transfer and consolidation is without merit.  The Court declines to strike the motion and its exhibits from the record.

## III.    PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs move for judgment on the pleadings against defendant Ohio, arguing that defendant has failed to file an answer or otherwise respond to the amended complaint.  Plaintiffs' motion was filed prior to defendant moving to dismiss the amended complaint.  Under Federal

Rule of Civil Procedure 12(c), a motion for judgment on the pleadings may be filed after the pleadings are closed.  Because the pleadings are not closed, a motion for judgment on the pleadings is not appropriate.  Plaintiffs' motion is denied.

**VI.**     **CLAIMS AGAINST RADIO MARTINIQUE ARE DISMISSED.**

Upon review, the Court finds that no allegation in the amended complaint mentions Radio Martinique or supports in any way any claim for relief whatsoever against Radio Martinique.  The Court *sua sponte* dismisses the complaint against Radio Martinique.

**CONCLUSION**

For the foregoing reasons, Federal Defendants' Motion to Dismiss Amended Complaint, filed by United States Immigration and Customs Enforcement, the Federal Bureau of Investigation, the Central Intelligence Agency, and the Broadcasting Board of Governors; Defendant Anne M. Fletcher dba Woods Edge Stables' Motion to Dismiss First Amended Complaint Under Rule 12(b)(6); Defendants Huntington Stables', Larry Donovan's and Holly Donovan's Motion to Dismiss First Amended Complaint Under Rule 12(b)(6); Defendants Red Hawk Stables & Waldbaums' Motion to Dismiss; Defendant Robert Brown LLC's Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6); and Defendant State of Ohio's Motion to Dismiss are GRANTED, and Plaintiffs' Motion for Judgment on Pleadings and Plaintiffs' Motion for Transfer and Consolidation are DENIED.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/23/09

15